93 N.J. Super. 404 (1967)
226 A.2d 30
IN THE MATTER OF THE TENURE HEARING OF DAVID FULCOMER, HOLLAND TOWNSHIP, HUNTERDON COUNTY.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1966.
Supplemental Briefs Submitted November 3, 1966.
Decided January 17, 1967.
*407 Before Judges SULLIVAN, KOLOVSKY and CARTON.
Mr. Joseph V. DeMasi argued the cause for teacher-appellant, David Fulcomer (Mr. Boyd Harbourt on the brief).
Mr. Cowles W. Herr argued the cause for respondent Holland Township Board of Education (Messrs. Herr and Fisher, attorneys).
Mrs. Marilyn Loftus Schauer, Deputy Attorney General, who appeared on behalf of State Board of Education, filed a statement in lieu of brief (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by CARTON, J.A.D.
The Board of Education of Holland Township dismissed David Fulcomer from his position as a tenure teacher in its school system for conduct unbecoming a teacher, arising out of certain incidents which occurred on December 20, 1961. He appeals from the decision of the State Board of Education sustaining the Commissioner of Education which affirmed the dismissal.

THE PROCEEDINGS BEFORE THE SCHOOL TRIBUNALS
The parents of a pupil in the school system filed written charges against the teacher on January 29, 1961, charging acts of physical violence against their son. The alleged misconduct took place in a classroom presided over by the teacher.
In accordance with the provisions of the "Tenure Employees Hearing Act," the township board held a meeting at which it determined that such charges, and the evidence in support of such charges would be sufficient, if true in fact, to warrant dismissal of the teacher, and then forwarded these charges to the Commissioner of Education with a certification as mandated by that act. N.J.S.A. 18:3-25.
After a hearing on the charges the Commissioner filed an opinion in which, after reviewing the evidence, he found that the teacher "improperly and unnecessarily did physical violence" *408 to the person of the pupil in the classroom on the day in question. His opinion concluded that these acts constituted conduct unbecoming a teacher sufficient to warrant dismissal by the township board. The Commissioner made no finding or decision as to whether the penalty to be imposed should be dismissal of the teacher or a reduction in his salary, but referred the matter back to the township board for that determination.
When the township board regained the case, it held a meeting at which it adopted a resolution by a 6-2 vote to discharge the teacher. It does not appear that the members of the board reviewed, or even had available, a transcript of the hearing before the Commissioner. During the course of the extended meeting there was an acrimonious exchange of remarks between members of the board and the teacher, in which members of the audience, including another teacher, participated.
The teacher appealed the Commissioner's determination to the State Board of Education. The State Board affirmed the finding of the Commissioner that the conduct of the teacher constituted conduct "unbecoming a teacher." However, it concluded that there was not sufficient evidence in the record to determine whether outright dismissal from the system was warranted, or whether a lesser penalty would have sufficed. Consequently, the State Board remanded the matter to the Commissioner for a further hearing. The State Board said:
"* * * At said hearing evidence shall be produced by all parties concerned showing David Fulcomer's record as a teacher prior to the incidents of December 21, 1961 [sic], evidence bearing upon the question as to whether Mr. Fulcomer's conduct amounted to deliberate premeditated action, motivation or provocation for such acts, and any other evidence which the Commissioner may deem relevant to the question of the penalty to be imposed. Evidence shall likewise be introduced at said hearing bearing upon the employment of Mr. Fulcomer subsequent to the above incidents and down to the present date. It is further recommended that upon completion of said hearing the Commissioner shall report to this Board his findings and decision as to the proper penalty. * * *"
*409 The Commissioner did conduct a further hearing. He found that the testimony failed to disclose any significant basis of provocation as to the incidents upon which his first determination was reached. However, he did not make a specific report to the State Board of his findings and decision as to the proper penalty, nor did he make an independent finding or decision as to the proper penalty. Instead, he merely concluded that the local board had made a full and fair determination of the penalty and that its judgment that the teacher should be dismissed from his tenure position was not unreasonable, arbitrary or capricious.
The Commissioner did not refer the matter a second time to the local board for reconsideration of the penalty to be imposed in the light of the additional evidence on the second hearing. He expressed the thesis that the proper exercise of his function restricted him "from substituting his judgment for that of the members of the local Board" in matters which are within the exercise of their discretionary authority unless their determination is clearly unreasonable, arbitrary or otherwise unlawful.
The State Board of Education affirmed this decision of the Commissioner for the reasons set forth in his opinion. Hence this appeal.
We have reviewed the voluminous records of the various proceedings before the local board of education, the Commissioner and the State Board and we are satisfied that the evidence fully supports the finding that the teacher was guilty of conduct unbecoming a teacher, warranting disciplinary action.
However, in our opinion the Commissioner erred in failing to render an independent decision as to the penalty to be imposed based on the evidence before him and in permitting the local board to exercise this function. The Commissioner also erred in restricting his function to an appellate review as to whether the local board's determination was clearly unreasonable, arbitrary or unlawful. This restricted interpretation of the duties imposed upon him by the Tenure *410 Employees Hearing Act, we believe, resulted in prejudice to the rights of the appellant and requires that the matter be remanded to the Commissioner for decision as provided herein.

THE COMMISSIONER'S FUNCTION UNDER THE TENURE EMPLOYEES HEARING ACT
The Commissioner's referral of the matter back to the local board to decide whether the teacher should be dismissed or his salary reduced was based upon the view of the Department of Education that the Tenure Employees Hearing Act neither directed nor authorized him to decide this issue. The Department's contention is that N.J.S.A. 18:3-29 and R.S. 18:6-20 contain provisions that no teacher shall be appointed, transferred or dismissed except by a majority vote of the board, and that N.J.S.A. 18:3-29 confers no specific authorization on the Commissioner to impose a penalty.
The Tenure Employees Hearing Act, viewed as a whole, does not bear this narrow interpretation of his function. The legislative intent that the Commissioner shall hear and decide the entire controversy clearly appears from a brief review of its provisions and an examination of its historical background.
At the outset, the statute broadly ordains that all hearings on charges preferred against any employee of the board of education holding tenure of office, position or employment covered by Title 18, "Education," of the Revised Statutes shall be conducted in accordance with this act. N.J.S.A. 18:3-24. The board of education is authorized to make a preliminary determination that a written charge made in accordance with any provisions of Title 18 and the evidence in support of it would be sufficient in fact to warrant dismissal or a reduction in salary. N.J.S.A. 18:3-25. In such event, the board is directed to forward the charge to the Commissioner of Education, together with its certificate of such determination, and to serve a copy upon the employee. N.J.S.A. 18:3-25. The board may suspend the employee *411 so charged, with or without pay, pending a determination. N.J.S.A. 18:3-28.
Upon receipt of the charge and the board's certification, the statute directs that the Commissioner, or a person appointed to act in his behalf, "shall conduct a hearing thereon within a 60-day period." Such hearing is required to be conducted in accordance with rules and regulations promulgated by him and approved by the State Board of Education. Authority is conferred upon him to dismiss the charges before such hearing "on the grounds that they are not sufficient to warrant dismissal or reduction in salary." N.J.S.A. 18:3-29. Upon conducting such hearing, the Legislature directs that:
"The commissioner shall render a decision within 60 days after the close of the hearing on the charge against the employee." N.J.S.A. 18:3-29.
The Tenure Employees Hearing Act thus establishes an entirely new and comprehensive procedure for the resolution of all controversies involving charges against all tenure employees not subject to Civil Service under Title 18. It is designed to replace the removal and disciplinary procedure relating to various classes of employees long in force under a variety of provisions of the New Jersey School Laws: R.S. 18:13-17 (teachers); R.S. 18:5-51 (secretary, district clerk, secretarial personnel); R.S. 18:5-67 (janitors); R.S. 18:6-27 (secretary, superintendent of schools, business manager, other officers, agents and employees); R.S. 18:7-58 (principals and teachers); R.S. 18:14-64.1 (nurses).
Formerly all phases of the hearing and decision making function were performed by the local boards. The Commissioner reviewed such determinations on appeal pursuant to the general power conferred upon him to "decide * * * all controversies and disputes arising under the school laws." R.S. 18:3-14.
Now the Commissioner conducts the initial hearing and makes the decision. Indicative of the intention to vest finality of decision on all aspects of the charges is the power *412 given him to dismiss the charges before such hearing if he determines them to be insufficient in law. He is directed to render a decision on the charge within 60 days after the close of the hearing. A strict and precise timetable for the disposition of each stage of the proceeding represents legislative recognition of the importance of a prompt resolution of such disputes.
There is nothing in the new act which suggests the local boards were intended to retain any part of the jurisdiction which they formerly exercised in such controversies other than a preliminary review of the charge and the required certification to the Commissioner. Their participation in such proceedings is specifically confined to that limited function. Thus, the Legislature has transferred, from the local boards to the Commissioner, the duty of conducting the hearing and rendering a decision on the charge in the first instance. His jurisdiction in all such cases is no longer appellate but primary.
The pivotal words of the statute are that the Commissioner shall "conduct a hearing" on the charge and "render a decision." The requirement of a hearing has been held to mean the hearing of evidence and argument and judgment thereon. See In re Masiello, 25 N.J. 590, 600 (1958).
The legislative mandate to "render a decision * * * on the charge" implies a duty on his part to review the evidence and to resolve all issues necessary to a final determination. It means that the Commissioner must settle or determine the controversy by giving judgment. The imperative of "render[ing] a decision * * * on the charge" is not satisfied by a simple finding whether the charge is true in fact coupled with a statement of the maximum penalty such misconduct may warrant. To confine the Commissioner's function to this limited sphere would not only deprive him of a part of the decision-making function, it would also make his role a sterile one. The power to impose the penalty is necessary to make his hearing and decision meaningful. Common sense dictates that he must have and exercise the power to impose *413 the penalty gauged by the evidence before him at the hearing.
On the other hand, nothing in the statute suggests that the local boards were intended to retain that power. It contains no express language to that effect, or language from which any such intention can fairly be implied. Indeed, the fact that the Legislature saw fit to confer upon the local boards the power to make a preliminary review of the sufficiency of the charge and to spell out the scope of that review negates any intention of conferring any additional power upon them in the process.
The following comment of Justice Francis in In re Masiello, supra, concerning the authority conferred by R.S. 18:3-14 upon the Commissioner to decide controversies and disputes arising under the general school law is apposite:
"The mandate of the Legislature is that the Commissioner `shall decide * * * all controversies and disputes.' `Decide' in such a context means decision after hearing on the facts presented to him * * *.

* * * * * * * *
* * * On the other hand, if, as in this case, the hearing demanded by principles of fair play is had before him for the first time, then the obligation to `decide' signifies a completely de novo and independent decision on the facts." (At pp. 605, 606)
The legislative history of the Tenure Employees Hearing Act confirms the legislative intent that the Commissioner shall decide the entire controversy, including the extent of the penalty. See Hoek v. Board of Education of City of Asbury Park, 75 N.J. Super. 182, 190 (App. Div. 1962); Statement attached to Senate Bill No. 54 and Assembly Bill No. 104, which became L. 1960, c. 136; 32 New Jersey Education Ass'n Review, p. 220 (1958-1959).
The main purposes of that law were two-fold. The first was to eliminate the vice which inhered in the former practice of the board's being at one and the same time investigator, prosecutor and judge. Under these conditions it *414 was pointed out most decisions were eventually appealed to the Commissioner in any case.
Referral of the case to the local board to impose the penalty when that board has already certified it to the Commissioner represents a reversion to the vice which the Legislature sought to eliminate from the former practice. Particularly is this true where the board itself prefers the charges or becomes an adversary on an appeal from the Commissioner's decision. The present case illustrates this problem. The local board here has been actively defending on appeal the appropriateness of a penalty which it found at the outset was warranted if the charges were true in fact, and later determined was justified on the basis of the Commissioner's findings. The appearance of some of the members of the board as witnesses on the second hearing before the Commissioner further compounded this violation of the spirit of the law. See Hoek v. Board of Education of City of Asbury Park, supra. See also Statements, supra, attached to the legislative bills, which refer to the board as deciding "to press the charges."
The second and no less important purpose was to remove the trial of such cases from the publicity attendant on the local hearing which "tears the community apart" and "disrupts the orderly conduct of local school affairs." See Statements, supra.
The piecemeal and convoluted procedure of having the local board decide the penalty long after it has made the preliminary determination required by the statute causes an inevitable revival of the strife in the community where the teacher is employed. This is vividly illustrated in the present case. The local board duly held a meeting on the charges and made the requisite certification to the Commissioner. The teacher was then suspended and the controversy removed to the calmer atmosphere of the Commissioner's hearing.
However, the referral of the matter back to the township board rekindled the smouldering fire of dissension among the members of the board, the teaching staff, and the public. The record clearly shows that a meeting supposedly convened *415 solely to determine the extent of the penalty to be imposed for the teacher's departure from decorum in a particular episode became the occasion for a heated debate as to the merits of his philosophy of education and school discipline and his general attitude toward the board.
It can hardly be expected that a determination under such circumstances would be confined to the facts and findings of the Commissioner on the particular charges, or that the penalty imposed would be reasonably commensurate with the offense found to have been committed.
Fulfillment of these statutory objectives can thus only be accomplished through a complete decision by the Commissioner of all issues involved in the dispute. The mere finding of guilt or innocence on the charge of unbecoming conduct, leaving to the local board the important decision as to the penalty to be imposed, frustrates both objectives. Moreover, since the local board did not see the witnesses or hear their testimony, their ability to fix a just penalty was seriously impaired. Indeed, as heretofore noted, it does not appear that the local board reviewed, or even had available, the transcript of the hearing before the Commissioner.
We cannot assume an intention by implication on the part of the Legislature to fragmentize the machinery in the unorthodox fashion suggested by the Department of Education. So to subdivide the decision-making power would make meaningless the provisions in the statute for the prompt disposition of the various phases of the proceeding. Moreover, it is incongruous for the local board to pass on one phase of the proceeding, and then at a later stage, to decide another phase of the same case based on yet another determination of another agency. Particularly is this true, where as here the intermediate determination would be made by an administrative agency at a higher level. Similarly incongruous are the exercise of one part of the decision-making power by the Commissioner and his retention of an appellate review of a coordinate phase of the same proceeding. We discern nothing in the statute which suggests that the Legislature intended to *416 beget so exotic an administrative hybrid. Harrison v. State Board of Education, 134 N.J.L. 502 (Sup. Ct. 1946), is relied upon as approving the procedure adopted by the Department of Education in this case. That case neither expressly nor inferentially sanctions the propriety or regularity of splintering the administrative or judicial process in this fashion. See also 2 Davis, Administrative Law Treatise, c. 11 (1958).
The Commissioner's conclusion that the local boards retain the power to determine the penalty rests primarily upon his interpretation of R.S. 18:6-20 and R.S. 18:7-58. These companion sections of chapter 6 and chapter 7 of the School Law provide that no principal or teacher shall be appointed, transferred or dismissed, no policy fixed, and no course of study shall be adopted or altered, nor textbook selected except by a majority vote of the whole board.
The theory is that since the Legislature has not expressly repealed the portion of these provisions relating to the dismissal of teachers, their continued existence is incompatible with a legislative intent under the newly adopted Tenure Employees Hearing Act that the Commissioner shall exercise this power. Not so. These provisions still have efficacy insofar as teachers under contract or nontenure are concerned. Authority for the dismissal of these teachers, as well as for the performance of the other acts listed therein, must still be sought under these general provisions of the School Law.
It must also be remembered that the new legislation is much broader in its scope than the tenure provision formerly applicable to teachers. Dismissal of these additional categories of school employees given tenure protection under the various provisions referred to above was not authorized or affected by the provisions of R.S. 18:6-20 and R.S. 18:7-58 relating to teachers.
Mere failure of the Legislature to modify the particular statutory provisions requiring majority approval of certain actions (including employment, transfer and dismissal of a single category of employees) cannot justify the conclusion *417 that the Legislature thereby intended to deny to the Commissioner the necessary power under another statute of broader scope applicable to all categories of employees.
Likewise, no special significance can be attached to the circumstance that the amendatory provisions of L. 1960, c. 137, contain language parallel to that of the Teachers' Tenure Act (N.J.S.A. 18:13-17 (1952)), to the effect that removal or reduction in salary may not be effected until after the charge has been examined into and found true in fact. The suggestion is that the Legislature has thereby indicated an intent to substitute the Commissioner for the local board as the agency designated to perform the fact-finding function, confining the Commissioner's function to this aspect of the proceeding and leaving to the local boards the penalty fixing function.
The argument thus advanced ignores the overriding language of the Tenure Employees Hearing Act (L. 1960, c. 137), directing the Commissioner to "conduct a hearing" and to "render a decision * * * on the charge." The duty cast upon the Commissioner is not limited to an examination into the charge and a determination whether it is true in fact.
This argument is likewise flawed by the unwarranted assumption that the Tenure Employees Hearing Act must be interpreted solely in the light of the removal procedure previously applicable to teachers. Similar phraseology occurs in the amendatory provision relating to janitors, yet the earlier provision relating to this class of employees (R.S. 18:5-67), unlike N.J.S.A. 18:13-17, contains a specific grant of power of dismissal to the local boards. Such similarities and dissimilarities of language in the amendatory legislation (L. 1960, c. 137) and their amended counterparts in the School Law are merely incidental to the comprehensive treatment accorded by the Tenure Employees Hearing Act.
Nor can the administrative interpretation adopted by the Department of Education and acquiesced in by the parties give it added vitality or validity in determining the *418 meaning of the statute. The Commissioner has concededly not promulgated rules and regulations as required by the statute for the conduct of the hearings. His determination was therefore not made pursuant to any formally established procedure. It represents no long-standing practical construction having wide public reliance. See 1 Davis, Administrative Law Treatise, § 5.06 (1958); 2 Sutherland, Statutory Construction (3d ed. 1943), § 5103.

THE TEACHER'S RIGHT TO AN INDEPENDENT DETERMINATION BASED ON ALL THE EVIDENCE
The Commissioner's restriction of his role to an appellate review as to whether the local board's decision after the earlier hearing was clearly unreasonable, arbitrary or unlawful further erodes the teacher's rights in such cases. The teacher is entitled to an independent determination as to the scope of the penalty based on all the evidence presented against him. What was said in In re Masiello, supra, although used in a different context, applies with equal force to the Commissioner's function in this case:
"When the Commissioner regained the record after all of the evidence of the parties had been compiled, what was his function? He took the view that it was to study the proof in order to decide whether the action of the Board of Examiners was arbitrary or capricious or whether it was the result of bias or prejudice. We cannot agree." (25 N.J., at p. 605)
Cf. Board of Education of East Brunswick Tp. v. Township Council of East Brunswick, 48 N.J. 94, 106 (1966).
The Commissioner conducted the second hearing of the evidence at the direction of the State Board for the purpose of determining the appropriate penalty to be imposed under the circumstances. Neither he nor the local board made any independent decision on all the evidence as to what that penalty should be. The local board had before it the Commissioner's findings on the evidence in the first hearing. Neither then, nor ever, did it have the benefit of the evidence *419 or the Commissioner's findings at the second hearing. On the other hand, the Commissioner rendered no affirmative decision of his own as to the penalty, but confined his review to a determination whether the board's earlier decision was arbitrary or unlawful.
The teacher was thus denied an independent determination by either agency based on all the evidence as to what penalty should justifiably be imposed. Parenthetically, we note that a logical application of the Department's view that the local board had power to fix the penalty would have compelled the Commissioner to refer the matter once again to the local board to reconsider the nature of the penalty in the light of all the evidence at both hearings.
As the Commissioner's review of the record of what transpired at the meeting of the local board demonstrates, the board's determination that the teacher should be discharged was influenced considerably by its view of the teacher's general attitude and was not confined to a decision of the proper punishment for his conduct on the day in question.
The Commissioner's conclusion that the board's action in dismissing the teacher was not unreasonable or arbitrary reflects an acceptance in some degree of the factors deemed relevant by the local board in fixing the punishment. In his opinion after the second hearing the Commissioner stated that he accorded much weight to the meeting of the local board following the earlier decision; that he was convinced from his study of that meeting that the board gave "full consideration to all aspects of this matter and reached its determination to dismiss the teacher fairly and properly; that the Board was aware that the dismissal in this case might be unduly harsh or unwarranted." He said further:
"* * * He is convinced that its members approached the matter with an open mind and finds reason to believe that a lesser penalty might have resulted had the teacher shown any disposition to co-operate. Faced with what was characterized as a `belligerent' and `defiant' attitude, the majority of the members decided that the teacher's usefulness to this school system was ended and that he could not be reinstated without harm to the school."
*420 Earlier in his opinion the Commissioner commented extensively as to what the transcript of the meeting before the township board had disclosed concerning "the situation which existed with respect to this teacher in this school."
The teacher was entitled to an affirmative determination by the Commissioner on all the evidence relating to the extent of the penalty for his conduct. In our view, his rights were seriously prejudiced by the intrusion of such extraneous considerations into the determination of this issue.

THE PENALTY WARRANTED BY THE TEACHER'S ACTIONS
The Commissioner's opinion on the first hearing summarizes the evidence as to the incidents which gave rise to the charges:
"The testimony discloses that on the morning of December 20, 1961, while respondent was teaching an eighth grade arithmetic class, a girl's pocketbook was passed among several pupils until it came to rest beside the desk of Donald Yowell. The teacher, becoming aware of inattention and discovering its source, dropped his textbook on the first pupil's desk, went to Donald and laid hands upon him. When released, the boy went to the front of the room, was directed to resume his seat by the teacher, made as though to do so, but instead ran toward the door in the rear to leave the classroom. The teacher pursued the boy, again laid hands upon him, and both of them fell to the floor. The pupil escaped the teacher's hold, left the classroom, and reported to the principal, requesting permission to telephone his parents and go home. From the beginning of the incident until the pupil left the room, the teacher gave no commands to the pupil other than to resume his seat."
The Commissioner pointed out that there was a conflict in the testimony as to whether the teacher actually struck the pupil with his fist or hand, the exact hold which he had on the boy and whether he "tackled" the pupil in the rear of the classroom as charged by the pupil, or grabbed the pupil as they caromed off the furniture, as contended by the teacher. The Commissioner found these differences immaterial for purposes of determining whether Fulcomer's acts constituted conduct unbecoming a teacher.
*421 We agree with the view expressed by the Commissioner that:
"The Commissioner cannot find any justification for, nor can he condone the use of physical force by a teacher to maintain discipline or to punish infractions."
We hold no brief for the teacher's conduct in this case. Other proper means were available to him to maintain discipline or compel obedience. Nor have we any doubt that unfitness to remain a teacher may be demonstrated by a single incident if sufficiently flagrant. See Redcay v. State Board of Education, 130 N.J.L. 369 (Sup. Ct. 1943), affirmed o.b. 131 N.J.L. 326 (E. & A. 1944).
Here, however, there is no indication in the record that the teacher's acts were premeditated, cruel or vicious, or done with intent to punish or to inflict corporal punishment. Rather, they bespeak a hasty and misguided effort to restrain the pupil in order to maintain discipline.
Although such conduct certainly warrants disciplinary action, the forfeiture of the teacher's rights after serving for a great many years in the New Jersey school system is, in our view, an unduly harsh penalty to be imposed under the circumstances. The Commissioner noted that the teacher received his full salary during his suspension by the township board. However, consideration should be given to the impact of the penalty on appellant's teaching career, including the difficulty which would confront him, as a teacher dismissed for unbecoming conduct, in obtaining a teaching position in this State, with the resultant jeopardy to his equity rights in the Teacher's Pension Fund accruing from his 19 years credit.
At the time appellant was suspended he had 23 years' teaching experience and held a master's degree. He had been employed since 1954 by the Holland board. It appears that if this teacher, who is aged 56, is re-employed in New Jersey, he will be eligible for retirement in approximately four years with a pension for life of one-half of his last year's salary  in this case an annual pension of at least $3,500. We observe *422 that the local board recognized that Fulcomer's teaching record was good and his teaching ability unquestioned. He had not been disciplined in any manner by the board prior to the date of the incidents involved in these charges, and he had consistently received pay raises each year.
The matter is therefore remanded to the Commissioner of Education for the purpose of making an affirmative decision as to the proper penalty to be imposed. Such penalty should be based upon the Commissioner's findings as to the nature and gravity of the offenses under all the circumstances involved, any evidence as to provocation, extenuation or aggravation, and should take into consideration any harm or injurious effect which the teacher's conduct may have had on the maintenance of discipline and the proper administration of the school system.
We retain jurisdiction.
SULLIVAN, S.J.A.D. (concurring).
I am in full agreement with the majority opinion and I concur in the remand to the Commissioner to fix a proper penalty. However, I would also hold that, under the facts and circumstances here shown, dismissal is not warranted and some lesser penalty should be imposed.
KOLOVSKY, J.A.D. (dissenting).
I do not agree that the Tenure Employees Hearing Act, L. 1960, c. 136, now N.J.S.A. 18:3-23 et seq. (Hearing Act), terminated the authority of local boards of education (local board) to determine the penalty to be imposed on a teacher having tenure who is found guilty of charges of inefficiency, incapacity, conduct unbecoming a teacher, or other just cause for disciplinary action.
I concur with the views expressed by all the parties to this litigation and the administrative interpretation adopted and applied by the State Department of Education since 1960, that the 1960 legislation  which includes not only L. 1960, c. 136 (chapter 136) but also L. 1960, c. 137 (chapter 137) *423  transferred from the local board to the State Commissioner of Education (Commissioner) only the function of examining into the charges and determining whether they are true in fact. Neither expressly nor by implication did the legislation transfer from the local board to the Commissioner the power to determine the penalty, whether it be dismissal or some less drastic disciplinary action. That power remains, as before, in the local board.
The Legislature has vested the power to appoint, transfer or dismiss teachers in the local board, directing that any such action must result from a majority vote of the whole number of members of the board. R.S. 18:6-20; R.S. 18:7-58.
Further, it is settled law that except as limited by a contract of employment, by the Federal and State Constitutions, by the Teacher's Tenure Act and by other legislation such as the Law Against Discrimination, the local board "has the right to employ and discharge its employees as it sees fit." Zimmerman v. Board of Education of Newark, 38 N.J. 65, 71 (1962).
Chapter 136, the Hearing Act, must be read in conjunction with chapter 137, which was enacted at the same time. Key Agency v. Continental Cas. Co., 31 N.J. 98, 103 (1959). Chapter 137 amended sections of the various tenure acts applicable to employees of local boards, viz., N.J.S.A. 18:5-51, 18:5-67, 18:6-27, 18:7-56, 18:13-17, 18:14-44, and section 2 of L. 1957, c. 181 (N.J.S.A. 18:14-64.1(b)). By its terms, chapter 137 was to be inoperative unless and until the Hearing Act was enacted.
N.J.S.A. 18:13-17, a section of the Teachers' Tenure Act, read as follows prior to its amendment by L. 1960, c. 137:
"No teacher, principal, superintendent or assistant superintendent under the tenure referred to in section 18:13-16 of this Title shall be dismissed or subjected to a reduction of salary in the school district except for inefficiency, incapacity, conduct unbecoming a teacher or other just cause and after a written charge of the cause or causes has been preferred against him, signed by the person or persons making *424 the same, and filed with the secretary or clerk of the board of education having control of the school in which the service is being rendered, and after the charge has been examined into and found true in fact by the board of education upon reasonable notice to the person charged, who may be represented by counsel at the hearing. Charges may be filed by any person, whether a member of the school board or not." (Emphasis added)
Chapter 137 amended N.J.S.A. 18:13-17 by substituting for the italicized language the following:
"and after the charge has been examined into and found true in fact after a hearing conducted in accordance with the Tenure Employees Hearing Act."
Identical substitutions were made by chapter 137 in the statutory provisions dealing with the tenure rights of other employees of local boards, viz.: persons holding a secretarial or clerical position, N.J.S.A. 18:6-27 and N.J.S.A. 18:7-56; attendance officers, R.S. 18:14-44; and school nurses, L. 1957, c. 181, § 2, (N.J.S.A. 18:14-64.1(b)). The same change was made by chapter 137 in the sections dealing with other tenure employees, secretaries, assistant secretaries and business managers, N.J.S.A. 18:5-51, and public school janitors, R.S. 18:5-67, which, while not using the language underscored above, similarly provided for a hearing before the local board and a determination by it that the offense charged had been proven.
By the adoption of chapters 136 and 137, the function of examining into a charge against an employee having tenure and determining whether it is true in fact is taken from the local board and vested in the Commissioner or a person appointed to act in his behalf. N.J.S.A. 18:3-29.
Nothing in chapter 137 manifests a legislative intent to modify or eliminate the authority of the local board under N.J.S.A. 18:13-17 and the other cited tenure sections to dismiss or impose some other penalty upon a teacher or other employee, despite his tenure rights, once an appropriate charge against him has been found to be true in fact.
*425 Nor is such legislative purpose to be found in chapter 136. The Hearing Act prescribes the procedures to be followed in the presentation of and hearings on charges preferred against an employee of a local board who is under tenure of office. Those procedures culminate in a hearing before the Commissioner (or someone appointed to act for him) and factual findings by the hearing official. If his finding is that the charge is "true in fact," then it is for the local board to impose the penalty pursuant to the provisions of the tenure sections exemplified by N.J.S.A. 18:13-17.
The basic motivation for the enactment of chapter 136 and 137 was the desire to eliminate the prejudice inherent in a situation where the local board "often appears as both prosecutor and judge, i.e., it makes the charges and then must judge of their truth." (Statement attached to the bill which became chapter 136.) That purpose was accomplished by the designation of the Commissioner in place of the local board as the one who is to find whether the charge is "true in fact." Effectuation of that purpose does not require that the power to fix the penalty be vested in the State Commissioner rather than the local board.
Fact-finding is a judicial function. There is nothing improper or unusual in placing that function in one body, here the Commissioner, while leaving the determination of whether the employee is to be dismissed or penalized in some other way in the hands of the local board whose function it is to employ and discharge employees. Cf. Harrison v. State Board of Education, 134 N.J.L. 502 (Sup. Ct. 1946).
In the Harrison case, prosecutrix had tenure of office as principal of the Girls Vocational School at Woodbridge, a county institution. After a hearing, the county board of education found her guilty of misconduct and ordered her dismissal. The State Commissioner reversed. The State Board of Education reversed the Commissioner and affirmed the local board. In affirming the State Board, the court noted that under the Certiorari Act, R.S. 2:81-8, it was under a duty to weigh the evidence and make its own independent *426 determination of the facts. It then proceeded to review the evidence and found that the proofs established the truth of the charges, concluding:
"We are only concerned with the truth of the charges; once guilt of misconduct has been established, the disciplinary action is exclusively within the domain of the local board." (At p. 505)
In my opinion, the Commissioner followed the statutory mandate when on June 11, 1962, after determining that the charges against appellant were true in fact and were "sufficient to warrant his dismissal by the Board of Education of Holland Township under the provisions of R.S. 18:13-17," he remanded the matter to the local board for the determination of the penalty to be imposed.
Following his dismissal by the local board on June 25, 1962, appellant appealed to the State Board of Education. In its decision of December 4, 1963 the State Board affirmed the Commissioner's findings as to the truth of the charges. However, it ruled that "there is not sufficient evidence in the record before this board in order to reach a determination as to whether outright dismissal from the system was warranted or whether a lesser penalty would have sufficed." It remanded the matter to the Commissioner "to the end that he shall forthwith conduct a hearing at which there shall be developed all evidence relevant to the question of the propriety of the penalty to be imposed upon David Fulcomer for his conduct as above set forth" and then "report to this board his findings and decision as to the proper penalty." The State Board retained jurisdiction of the appeal.
Following a hearing pursuant to the remand, the Commissioner filed an opinion dated November 13, 1964, in which he found:
"(1) that the Holland Township Board of Education gave full and fair consideration to a determination of the penalty to be imposed upon David Fulcomer as a result of conduct unbecoming a teacher; (2) that its judgment that his tenure of position was forfeit and he be dismissed from its employ was not unreasonable, arbitrary, or *427 capricious in the circumstances of this case. The Commissioner finds no reason to reverse the decision of the Holland Township Board of Education."
By a decision dated March 2, 1966, the State Board affirmed the Commissioner for the reasons set forth in his opinion of November 13, 1964. Appellant appealed to this court under R.R. 4:88-8.
The majority and I agree that there is substantial evidence in the record to support the findings by the administrative bodies that the charges are true in fact and that, therefore, this court should not disturb those findings. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965).
Our basic disagreement concerns who is to fix the penalty: the Commissioner as the majority has ruled, or the local board as I believe.
Further, in my opinion, the local board's determination as to the penalty to be imposed is not to be disturbed, absent an abuse of discretion. Unless such abuse of discretion is shown, neither the Commissioner, the State Board nor we may modify the penalty fixed by the local board. Harrison v. State Board of Education, supra, 134 N.J.L., at p. 505; Russo v. The Governor of State of New Jersey, 22 N.J. 156, 175 (1956); see also Boult v. Board of Education of Passaic City, 136 N.J.L. 521, 523 (E. & A. 1948); Kopera v. West Orange Board of Education, 60 N.J. Super. 288, 295 (App. Div. 1960). To be distinguished are cases arising under the Civil Service Act, for that act grants power to the Civil Service Commission to modify a penalty imposed by the municipality on one of its employees. On judicial review of the determination of the Civil Service Commission, the court may revise the decision made by the Civil Service Commission with respect to the penalty. West New York v. Bock, 38 N.J. 500, 514, 520 (1962); see also same case below 71 N.J. Super. 143, 148 (App. Div. 1961). Unlike the Civil Service Act, nothing in the Education Law authorizes the Commissioner or the State Board to modify the penalty imposed by the local board.
*428 Both the Commissioner and the State Board ruled that the action of the local board in fixing the penalty at dismissal in the circumstances of this case was neither unreasonable, arbitrary or capricious. I find no justification for reversing those determinations, particularly in view of the expertise of the Commissioner and the State Board in the area here involved. Freud v. Davis, 64 N.J. Super. 242, 246 (App. Div. 1960).
I would affirm.