145 N.J. Super. 96 (1976)
366 A.2d 1337
JOHN GISH, PETITIONER-APPELLANT,
v.
THE BOARD OF EDUCATION OF THE BOROUGH OF PARAMUS, BERGEN COUNTY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1976.
Decided November 4, 1976.
*99 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Emil Oxfeld argued the cause for appellant (Messrs. Rothbard, Harris & Oxfeld, attorneys).
Mr. Joseph A. Rizzi argued the cause for respondent (Messrs. Winne & Banta, attorneys; Mr. Robert M. Jacobs on the brief).
PER CURIAM.
This appeal represents another step in the continuing efforts of appellant John Gish to resist conformance to a directive of the Paramus Board of Education (board) that he submit to a psychiatric examination. An earlier unsuccessful proceeding by which he challenged the constitutionality of the statutes under which the board acted, N.J.S.A. 18A:16-2 and 3, is reported as Kochman v. Keansburg Bd. of Ed., 124 N.J. Super. 203 (Ch. Div. 1973). These statutes read as follows:

18A:16-2. Physical examinations; requirement
Every board of education shall require all of its employees, and may require any candidate for employment, to undergo a physical examination, the scope whereof shall be determined under rules of the state board, at least once in every year and may require additional individual psychiatric or physical examinations of any employee, whenever, in the judgment of the board, an employee shows evidence of deviation from normal, physical or mental health.
*100 Any such examination may, if the board so requires, include laboratory tests of fluoroscopic or X-ray procedures for the obtaining of additional diagnostic data.

18A:16-3. Character of examinations
Any such examination may be made by a physician or institution designated by the board, in which case the cost thereof and of all laboratory tests and fluoroscopic or X-ray procedures shall be borne by the board or, at the option of the employee, they may be made by a physician or institution of his own choosing, approved by the board, in which case said examination shall be made at the employee's expense.
In affirming the constitutionality of these statutes Judge Lane appropriately stated:
Before a teacher is ordered to submit to a psychiatric examination, he is entitled to a statement of the reasons for such examination, cf., Monks v. N.J. State Parole Board, 58 N.J. 238, 249-250 (1971), and to a hearing, if requested, cf. Williams v. Sills, 55 N.J. 178, 186 (1970), * * *. [Kochman, supra at 213]
A brief history of the events constituting the prelude to this appeal is necessary. Appellant has been employed as a teacher in a high school under the jurisdiction of the board since 1965. Until 1975 he taught classes in English and related subjects. In addition he was the advisor to the high school newspaper staff for several years, led the production of a school play and for a number of years led a discussion on "Great Books." In June 1972 Gish assumed the presidency of the New Jersey Gay Activists Alliance and thereafter participated in a number of communications through various public media in which he promoted the Alliance. He also attended a convention of the National Education Association and helped organize a caucus there.
On July 10, 1972, following a meeting held that day, the board adopted a resolution directing appellant to undergo a psychiatric examination by Dr. Richard Roukema pursuant to the foregoing laws. This resolution recited as reasons for the directive that the board had authorized its Superintendent (of Schools) and the board attorney to consult with Dr. Roukema, the board's consulting psychiatrist, as to his *101 opinion whether the "overt and public behavior" of Gish indicated a strong possibility of potential psychological harm to students of the school district as the result of their continued association with him, and that the doctor had given an affirmative reply.
Appellant then filed the above-mentioned action to test the constitutionality of the statutes under which the board had acted. On June 7, 1973, after Judge Lane's opinion was entered, the Superintendent delivered to Gish by letter a copy of the July 10, 1972 resolution and a statement of reasons for the board's requirement of the examination.
On June 28, 1973 the board, by resolution, rescinded the directive that the examination be conducted by Dr. Roukema, reciting that it felt that it should be conducted by a psychiatrist "totally independent of the overt and public behavior" of Gish. It required the examination to be made by Dr. Edward Lowell instead of Dr. Roukema.
On August 9, 1973 the board met privately with Gish and his two attorneys, at which time a letter containing additional reasons for the requested examination was given to him. At that meeting, the proceedings of which were recorded stenographically, Gish's attorney noted the absence of Dr. Roukema and that said absence "deprives Mr. Gish of that basic right to confront the witnesses against him." He then argued successively that the asserted reasons of July 9, 1972 constituted an attempted restriction on his client's right of free speech and free association, and that there was no finding by the board that his client's activities, as stated in the July 9, 1972 statement of reasons, showed a significant deviation from mental health or adversely affected his ability to teach.
Since Gish and his counsel had not had an opportunity to study the additional reasons supplied by the board, the board and Gish agreed to meet again on August 22, 1973. Between these two meetings the board presented a hypothetical set of facts, based on the reasons given theretofore to Gish, to Dr. Lowell for his opinion. On August 16, 1973 *102 Dr. Lowell, on the basis of said hypothesis, reported that Gish showed evidence of deviation from normal health.
At the August 22, 1973 meeting, likewise stenographically recorded, a copy of the statement of hypothetical facts as well as the reply from Dr. Lowell was presented to Gish's counsel. Appellant's counsel argued that Dr. Roukema and Dr. Lowell must be produced for cross-examination, since their respective opinions were relied upon by the board and their respective qualifications and credentials would be subject to questioning. Counsel indicated that following said cross-examination they might desire to produce opposing expert witnesses.
At the same meeting appellant's counsel again endeavored to persuade the board that the examination was not properly sought. Counsel argued that the request for the examination was in violation of appellant's constitutional rights to free speech and free association; that one assigned reason was factually erroneous, and that others might furnish the basis for disciplinary action, if true, but would not support a determination that such an examination was reasonably appropriate.
On August 28, 1973 the Superintendent addressed another letter to Gish which again directed that he submit to the examination. The letter stated that the examination was sought on the basis of the earlier statements of reasons, the opinions of Drs. Roukema and Lowell, "upon a consideration of the evidence presented by counsel on your behalf [at the hearings held on August 9 and 22, 1973]" and because "the Board of Education has determined that your conduct during said period evidences a harmful, significant deviation from normal mental health affecting your ability to teach, discipline and association with students of the Paramus Public Schools * * *."
Thereafter Gish appealed to the Commissioner of Education. When he affirmed the action of the board after an administrative hearing, Gish next appealed to the State *103 Board of Education.[1] That Board affirmed the decision of the Commissioner by a divided vote. The present appeal followed.
As has already been indicated, the reasons which caused the Paramus Board of Education to seek the psychiatric examination revolve around appellant's undisputed activities in the Gay Activists Alliance. Included in those activities was his encouragement of a "Hold Hands Demonstration" as part of the Alliance sponsorship, on the George Washington Bridge on May 6, 1973. The full panoply of specific instances need not be recited, because in large measure they appear to be factually uncontroverted. The position of appellant in his challenge below and on this appeal depends on the application of constitutional and legal principles, rather than upon a dispute of the substantive facts. And as part of this premise it may be added for the sake of clarity that the reasons do not include a single instance of any undue conduct or actions in the classroom or out of the classroom with respect to a particular student.
With this background we now approach the arguments for relief which are advanced to us. The first is that the Board's directive to submit to the psychiatric examination constituted a violation of his constitutional rights under the First (freedom of speech and press) and Fourteenth (due *104 process) Amendments as well as Article I of the New Jersey Constitution. N.J. Const. (1947), Art. I vouchsafes rights and privileges which parallel in large degree those which are guaranteed by our Federal Constitution. However, our attention is not directed to any particular paragraph of Article I.
This contention is without substance. The right to speak freely has long been recognized as being not without some restriction. Whether or not it is constitutionally permissible may depend on its timing, its substance, its purpose, its truthfulness and other factors. It is certain that the guarantee is dependent on the circumstances of each particular instance. Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503 (1969), 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). See also, Pickering v. Bd. of Ed., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Pietrunti v. Brick Tp., Bd. of Ed., 128 N.J. Super. 149 (App. Div. 1974), certif. den. 65 N.J. 573 (1974), cert. den. 419 U.S. 1057, 85 S.Ct. 42, 640 L.Ed.2d 654 (1974).
The board does not question the right of Gish to say or to do any of the things which are mentioned in the statement of reasons. It simply contends that, as it has determined with the supportive corroboration of two psychiatrists, Gish's actions display evidence of deviation from normal mental health which may affect his ability to teach, discipline and associate with the students.
School boards are entrusted by our Legislature with the duty of determining the general issue of fitness of teachers. They are sufficiently equipped to conduct a fair and impartial inquiry whenever such issue legitimately comes into question. Laba v. Newark Bd. of Ed., 23 N.J. 364, 384 (1957). Their obligation to determine the fitness of teachers is a reflection of their duties to protect the students from a significant danger of harm, whether it be physical (In re Fulcomer, 93 N.J. Super. 404 (App. Div. 1967)) *105 or otherwise. See Morrison v. State Bd. of Ed., 1 Cal.3d 214, 82 Cal. Rptr. 175, 461 P.2d 375 (Sup. Ct. 1969). And they need not wait until the harm occurs; a reasonable possibility of its occurrence warrants such action.
A teacher's fitness may not be measured "solely by his or her ability to perform the teaching function and ignore the fact that the teacher's presence in the classroom might, nevertheless, pose a danger of harm to the students for a reason not related to academic proficiency." In re Tenure Hearing of Grossman, 127 N.J. Super. 13, 32 (App. Div. 1974), certif. den. 65 N.J. 292 (1974), and authorities cited therein.
In Adler v. Bd. of Ed. of the City of New York, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952), it is stated:
* * * A teacher works in a sensitive area in a schoolroom. There he shapes the attitude of young minds toward the society in which they live. In this, the state has a vital concern. That the school authorities have the right and duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of the schools as a part of ordered society, cannot be doubted. * * * [342 U.S. at 493, 72 S.Ct. at 385]
Human nature is such that beliefs and attitudes may not be shed by a teacher as he steps into the classroom.
In light of the foregoing, we are satisfied that the board's determination was a fair and reasonable one  a determination which, as stated by the Commissioner, is "one which could logically be made by reasonable and fair-minded men who have evaluated petitioner's behavior and who are concerned with petitioner's fitness to be a teacher in intimate contact with numbers of impressionable, adolescent pupils." As noted, it was confirmed by two psychiatrists. It was based on credible evidence and did not constitute an abuse of discretion. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974).
We do not subscribe to appellant's second and last point  that he was entitled to but not afforded Fourteenth *106 Amendment protections of due process because the two psychiatrists, Drs. Roukema and Lowell, were not produced for cross-examination. Although we observe that no advance warning or request for the presence of Dr. Roukema was given to the board before the first meeting on August 9, 1973, that failure may be considered in assessing the sincerity of appellant's position, but it does not serve to defeat it.
At oral argument before us counsel candidly admitted that Gish was not entitled to the full sweep of due process rights as contemplated by the Fourteenth Amendment. However, he first urges under this point that due process requires an impartial decision-maker who has the appearance of impartiality as well as actual impartiality.
The principles asserted are not in dispute. However, they are misapplied, for several reasons. First, they apply to an official or body whose purpose in conducting the hearing is to determine whether sanctions or penalties shall be imposed. A requirement that appellant subject himself to a psychiatric examination can hardly be classified as a penalty or a sanction. See Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). What is due process depends upon what the state or governmental body seeks to take from or deprive a person of receiving.[2]Monks v. N.J. State Parole Board, supra 58 N.J. at 245. "[I]n determining what procedures [are] required, the competing interests of the individual teacher and the school board must be balanced." Drown v. Portsmouth School Dist. 435 F.2d 1182 (1 Cir.1970), cited with *107 approval in Monks, supra at 245. Appellant was afforded the opportunity to be heard after the specific reasons were furnished to him.
The submission by Gish to a psychiatric examination takes nothing from him except his time. His status as a teacher continues with full rights under the law. Therefore, from the standpoint of his being deprived of a right or privilege it is minimal, except as it may loom in his mind. But that subjective apprehension cannot control or limit the Board's right and obligation. As already indicated, the role of teachers in the shaping of young minds is a sensitive one. This very sensitivity adds weight to the side of the board in the mentioned competing interests between it and the teacher.
In any event, appellant was not deprived of such due-process rights, even if applicable. The order of the board was subject to a hearing and determination by the Commissioner, N.J.S.A. 18A:6-9, and a further review by the State Board, N.J.S.A. 18A:6-27, as was had in the instant case. The hearing before the Commissioner was de novo and not limited to a mere review of the proceedings before the board. On appeal to the Commissioner, Gish filed a petition and the board filed an answer. The proceedings, as stated by the Commissioner in his written decision, then became fully adversarial, "with all the elements of due process. * * * [A] pre-hearing conference is held. The issues are defined and procedures are determined. If a fact-finding hearing is necessary, witnesses may be subpoenaed to testify and are submitted to cross-examination." Winston v. So. Plainfield Bd. of Ed., 64 N.J. 582 (1974); Schwarzrock v. Bayonne Bd. of Ed., 90 N.J.L. 370 (Sup. Ct. 1917). See also, Ludwig v. Massachusetts, ___ U.S. ___, 96 S.Ct., 2781, 49 L.Ed.2d 732 (1976); North v. Russell, ___ U.S. ___, 96 S.Ct. 2709, 49 L.Ed. 534 (1976). Cf. In re Fulcomer, supra.
Finding no error in the decision of the State Board of Education, its determination is accordingly affirmed.
NOTES
[1] In his written opinion the Commissioner denied Gish's motion for "summary judgment" and held that a plenary hearing was unnecessary because the facts were essentially undisputed. He also noted that in a parallel proceeding resulting from proceedings taken by the board after Gish filed his appeal to the Commissioner he had on the same date set aside, without prejudice, tenure charges certified to him by the board and had ordered Gish's reinstatement to his last-held position of employment, with full back salary, pending final determination of his status after the psychiatric examination and the results reported to and reviewed by the board. Appellant contends that he is now back in the classroom. The board disputes this statement, insisting that he has since been employed in its administrative offices. This difference is not significant to the issues before us.
[2] The board attempted to follow scrupulously the directive from the Assistant Commissioner of Education dated February 2, 1972, which called to attention of local boards of education that any individual of whom such examination (under N.J.S.A. 18A:16-2) is required should be given the reasons therefor by the board and also "the right to be heard by the board" before the statute is applied.