NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3383-15T1

C.H.,

 Petitioner-Appellant,

v.

STATE-OPERATED SCHOOL DISTRICT
OF THE CITY OF CAMDEN, CAMDEN COUNTY,

 Respondent-Respondent.
————————————————————————————————

 Submitted August 1, 2017 – Decided August 23, 2017

 Before Judges Hoffman and Currier.

 On appeal from the Commissioner of
 Education, Docket No. 122-6/15.

 Michael A. Armstrong & Associates, LLC,
 attorneys for appellant (Morrison Kent
 Fairbairn, on the briefs).

 Brown & Connery, LLP, attorneys for
 respondent State-Operated School District of
 the City of Camden (Louis R. Lessig and
 Benjamin S. Teris, on the brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent New Jersey
 Commissioner of Education (James M. Esposito,
 Deputy Attorney General, on the statement in
 lieu of brief).

PER CURIAM
 Petitioner C.H. appeals from the February 19, 2016 final

decision of the Commissioner of Education (Commissioner),

declining to reinstate her teaching position with respondent,

State-Operated School District of the City of Camden. For the

reasons that follow, we affirm.

 Petitioner is a tenured teacher, certified to work with

handicapped students. She has worked for respondent as a

teacher for approximately twelve years. During the course of

her employment, petitioner had assignments teaching high school,

middle school, and elementary school students with special

needs.

 On March 16, 2012, petitioner requested an "immediate

transfer" from her position teaching an autistic class at the

Bonsall Family School, "for [her] own mental wellbeing and

physical safety," and "due to circumstances beyond [her]

control." Respondent placed petitioner at the Forest Hill

Elementary School to teach a class with behavioral disabilities.

One year later, petitioner requested a leave of absence from

February 19, 2013 to March 31, 2013, claiming she suffered from

panic attacks, anxiety, and insomnia, which caused her

difficulty focusing and affected her job performance.

 Upon returning from leave, respondent assigned petitioner

to teach a class with behavioral disabilities at the Molina

 2 A-3383-15T1
Elementary School. On April 23, 2013, petitioner was involved

in an incident where she physically restrained one of her

students. Following an investigation, the Institutional Abuse

Investigation Unit determined that abuse was not established,

pursuant to N.J.S.A. 9:6-8.21. However, because of this

incident, respondent assigned petitioner to the Sumner

Elementary School for the 2013-2014 school year, again to teach

an elementary level class for students with behavioral

disabilities.

 On November 15, 2013, petitioner attended a training

session for teachers of students with behavioral disabilities.

Petitioner left the session early, prompting respondent to send

her an official reprimand. According to petitioner, she left

the session after being chastised by a supervisor, and

thereafter suffered an anxiety attack.

 Petitioner further claimed she received the reprimand on

December 11, 2013, which caused her to have a panic attack on

that date. According to the school principal's account of this

incident, on the morning of December 11, she found petitioner

agitated and crying in her classroom. The school nurse called

9-1-1 due to petitioner's "agitated state, rambling and

cursing," and emergency services transferred her to the

hospital.

 3 A-3383-15T1
 Because of this incident and her "alleged concerning

pattern of behavior this year," respondent placed petitioner on

administrative leave, pending the result of a mental fitness

examination scheduled for January 9, 2014. However, petitioner

declined to undergo the evaluation, after learning respondent's

chosen psychologist would review her personnel records. The

parties eventually reached an agreement, selecting Jonathan H.

Mack, Psy.D., to conduct the evaluation.

 Dr. Mack interviewed petitioner and conducted psychological

tests on May 28 and 29, 2014. On August 11, 2014, he issued a

forty-five page "Confidential Report," outlining petitioner's

personnel file and medical records. He diagnosed petitioner

with an "Other Specified Personality Disorder," a "Sleep

Disorder," and a "History of Panic Disorder." Concluding his

review, Dr. Mack opined:

 The totality of the information available to
 me at this time indicates, within a
 reasonable degree of psychological and
 neuropsychological scientific certainty,
 that [petitioner] is at a high risk for
 continued problems in terms of disciplining
 her behaviorally disordered students with
 problematic behavior due to her chronic
 pain, her borderline personality features,
 and her overall heightened reactivity to the
 administration of the Camden Board of
 Education. It is my opinion, with all
 factors taken into account by me at this
 time that [petitioner] is at unacceptable
 risk for inappropriate behavior with her
 students when under stress. It is further
 4 A-3383-15T1
 likely that conflicts will continue with
 Administration, given her personality style
 and given her particular history with this
 school district.

 [Petitioner] appeared to have done much
 better when dealing with the high school
 autistic population, and this may be a
 better placement for her. However, based on
 the information available to me at this
 time, it is my opinion that [petitioner] is
 at unacceptable risk for future problems
 with the elementary school behaviorally
 disordered population through the Camden
 Board of Education at this time.

 If another less stressful population is
 found for [petitioner] to work with, it is
 my opinion that she should be mandated to
 have weekly psychological counseling with a
 licensed psychologist and to be evaluated
 for mood stabilizing medications, and that
 she take these medications as prescribed if
 medically so ordered.

 Following this report, on August 29, 2014, petitioner sent

respondent a letter, requesting a transfer to a position

teaching students without behavioral disabilities, in accordance

with Dr. Mack's report and her previous accommodation requests.

According to petitioner, respondent did not respond to this

request. However, she received a document in December 2014, in

connection with a records update, which suggested respondent had

transferred her to a position at Woodrow Wilson High School,

effective September 2014.

 Nonetheless, on March 3, 2015, respondent advised

petitioner she was ineligible for further service, pursuant to
 5 A-3383-15T1
N.J.S.A. 18A:16-4, due to Dr. Mack's report indicating she

suffered from a mental abnormality. The letter stated

respondent would terminate her from payroll in sixty days, and

she would "remain ineligible for service absent the submission

of proof of recovery, satisfactory to the District"; further,

her failure to submit such proof within two years would render

her "permanently ineligible for service with the District."

 Thereafter, petitioner submitted two one-page letters to

respondent as proof of her recovery. In the first letter,

petitioner's treating psychiatrist, Safeer Ansari, D.O., stated,

"I currently find [petitioner] to be stable and mentally healthy

to return to work." However, Dr. Ansari agreed with Dr. Mack's

recommendation that petitioner

 is not to be placed in a B.D. or
 Behaviorally Disordered Classroom with
 students who are emotionally disabled and
 can become physically violent particularly
 at the elementary level. As stated by Dr.
 Mack, it appears that [petitioner] had the
 most success working with students at the
 High School level who suffer from
 Multiple/Learning Disabilities, Other Health
 Impairments, and/or the Autistic population.

 In the second letter, petitioner's primary care physician,

Chris F. Colopinto, D.O., stated he reviewed Dr. Mack's report,

but based on his own independent findings, he believed

petitioner was "mentally healthy enough to return to work

 6 A-3383-15T1
granted that she is provided with the accommodations that have

been recommended as appropriate."

 According to petitioner, respondent terminated her from

payroll on May 3, 2015. On June 1, 2015, petitioner filed a

petition with the Commissioner, requesting an order reinstating

her position and claiming respondent failed to respond to her

proofs of recovery.

 Shortly thereafter, on June 16, 2015, respondent informed

petitioner it reviewed her recovery letters, which "confirm that

she continues to be ineligible for service since neither letter

provides proof of [petitioner's] recovery satisfactory to the

District so that she can return to work." Respondent noted Dr.

Mack diagnosed petitioner with "at least three mental

abnormalities," and his report did not contain "any definitive

conclusion" that her "mental abnormalities would allow her to

safely work with any population in the District." Respondent

found petitioner's doctors both agreed with Dr. Mack's

recommendation not to place her in a behaviorally disordered

classroom.

 After the matter was transferred to the Office of

Administrative Law, petitioner moved for summary decision, and

respondent cross-moved for summary decision. On January 4,

2016, an Administrative Law Judge (ALJ) issued an Initial

 7 A-3383-15T1
Decision, granting summary decision in favor of respondent. The

ALJ concluded respondent acted reasonably by rejecting

petitioner's proofs of recovery, noting that "[w]hen balancing a

teacher's ability to teach against the safety of the student

population, a reasonable person would err on the side of the

safety of the student population."

 The Commissioner adopted these findings in its decision,

dated February 19, 2016, expressing concern that petitioner's

letters failed to "reference[] the multiple diagnoses made by

Dr. Mack" or "describe petitioner's recovery efforts and/or any

treatment regimen in place to address Dr. Mack's concerns." The

Commissioner further criticized the letters for "merely

provid[ing] conditional recommendations that petitioner be

permitted to return to work – with certain parameters in place,"

finding instead that "student safety must be the District's

paramount concern."

 This appeal followed. Petitioner now raises two issues for

our consideration: (1) the ALJ and Commissioner should have

granted her motion for summary decision because respondent's

actions were arbitrary and capricious; and (2) the ALJ and

Commissioner improperly granted respondent's cross-motion for

summary decision based upon disputed facts.

 8 A-3383-15T1
 Our scope of review of an agency's final decision is

limited and deferential. In re Carter, 191 N.J. 474, 482

(2007). A "strong presumption of reasonableness attaches to the

actions of the administrative agencies." In re Carroll, 339

N.J. Super. 429, 437 (App. Div.) (quoting In re Vey, 272 N.J.

Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994)),

certif. denied, 170 N.J. 85 (2001). We will refrain from

"disturb[ing] an administrative agency's determinations or

findings unless there is a clear showing that (1) the agency did

not follow the law; (2) the decision was arbitrary, capricious,

or unreasonable; or (3) the decision was not supported by

substantial evidence." In re Application of Virtua-W. Jersey

Hosp. Voorhees for a Certificate of Need, 194 N.J 413, 422

(2008). We are bound by this standard even if we would have

reached a different conclusion. Circus Liquors, Inc. v.

Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009).

Conversely, we review the agency's legal conclusions de novo.

Utley v. Bd. of Review, 194 N.J. 534, 551 (2008).

 Similar to summary judgment, an ALJ must grant summary

decision upon a showing "that there is no genuine issue as to

any material fact challenged and that the moving party is

entitled to prevail as a matter of law." N.J.A.C. 1:1-12.5(b);

see also E.S. Div. of Med. Assistance & Health Servs., 412 N.J.

 9 A-3383-15T1
Super. 340, 350 (App. Div. 2010). If the moving party properly

supports its motion for summary decision, the "adverse party in

order to prevail must by responding affidavit set forth specific

facts showing that there is a genuine issue which can only be

determined in an evidentiary proceeding." N.J.A.C. 1:1-12.5(b).

In deciding a summary judgment motion, the evidence must be

viewed "in the light most favorable to the non-moving party."

Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 329 (2010)

(citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520,

540 (1995)).

 At issue in this case are several statutory provisions

governing psychological evaluations of teachers. First, under

N.J.S.A. 18A:16-2(a), school boards "may require individual

psychiatric or physical examinations of any employee, whenever,

in the judgment of the board, an employee shows evidence of

deviation from normal, physical or mental health." "If the

result of any such examination indicates mental abnormality or

communicable disease, the employee shall be ineligible for

further service until proof of recovery, satisfactory to the

board, is furnished . . . ." N.J.S.A. 18A:16-4.

 As these provisions demonstrate, our legislature has

granted school boards the duty to determine teacher fitness, in

order to protect students from harm. Gish v. Bd. of Educ. of

 10 A-3383-15T1
Paramus, 145 N.J. Super. 96, 104-05 (App. Div. 1976), certif.

denied, 74 N.J. 251, cert. denied, 434 U.S. 879, 98 S. Ct. 233,

54 L. Ed. 2d 160 (1977). The "reasonable possibility" of harm

warrants action by a board. Id. at 105. Moreover, teacher

fitness "may not be measured 'solely by his or her ability to

perform the teaching function and ignore the fact that the

teacher's presence in the classroom might, nevertheless, pose a

danger of harm to the students for a reason not related to

academic proficiency.'" Ibid. (quoting In re Tenure Hearing of

Grossman, 127 N.J. Super. 13, 32 (App. Div. 1974), certif.

denied, 65 N.J. 292 (1974)).

 Importantly, "[a]n 'action of the local board which lies

within the area of its discretionary powers may not be upset

unless patently arbitrary, without rational basis or induced by

improper motives.'" Parsippany-Troy Hills Educ. Ass'n v. Bd. of

Educ. of Parsippany-Troy Hills, 188 N.J. Super. 161, 167 (App.

Div.) (quoting Kopera v. Bd. of Educ. of West Orange, 60 N.J.

Super. 288, 294 (App. Div. 1960)), certif. denied, 94 N.J. 527

(1983); see also Gish, supra, 145 N.J. Super. at 105 (finding a

school board's decision was "fair and reasonable"). Similarly,

an agency's review of a school board decision is entitled to "a

presumption of correctness" and will not be disturbed unless

arbitrary and unreasonable. Thomas v. Bd. of Educ. of Morris,

 11 A-3383-15T1
89 N.J. Super. 327, 332 (App. Div. 1965), aff'd, 46 N.J. 581

(1966).

 With these standards in mind, we turn to petitioner's

argument that the ALJ and Commissioner erred by denying her

motion for summary decision because respondent's actions were

arbitrary and unreasonable. In support of her argument,

petitioner cites statutes and case law that are not applicable

to this matter, such as the New Jersey Law Against

Discrimination, N.J.S.A. 10:5-1 to -49, which we decline to

address at length.1 Nonetheless, we interpret petitioner's

argument as asserting respondent misread Dr. Mack's report and

her proof of recovery letters, unreasonably deeming her

ineligible for service in all teaching positions without

considering alternative placement. Petitioner adds that

respondent "failed to reasonably exercise its discretion in

evaluating whether [she] was fit to return to work with or

without reasonable accommodations."

 However, having reviewed the record and applicable law, we

discern no basis to disturb respondent's decision. Dr. Mack's

extensive report diagnosed petitioner with several mental

conditions, which placed her at risk for inappropriate behavior

1
 In her brief supporting summary decision, petitioner stated
she had filed a discrimination claim with the EEOC, and thus she
was not asserting a discrimination claim here.
 12 A-3383-15T1
with students. The report left no question that petitioner's

mental health issues affected her teaching and disciplinary

abilities. See Kochman v. Keansburg Bd. of Educ., 124 N.J.

Super. 203, 211-12 (Ch. Div. 1973). Moreover, Dr. Mack only

noted a different position "may" be better for petitioner, and

only upon certain specified conditions. Although the report

raised the possibility that petitioner could return to a "less

stressful population," given the totality of Dr. Mack's

findings, respondent acted reasonably by deeming her ineligible

for service absent proof of recovery.

 We further agree with the Commissioner that respondent

acted reasonably by rejecting petitioner's proof of recovery

letters. Both letters stated petitioner was able to "return to

work," while agreeing with Dr. Mack's suggested conditions and

accommodations. As a "reasonable possibility" of harm will

justify a board decision, the Commissioner appropriately noted

that given the interest of student safety, petitioner's letters

were insufficient proof of recovery. Gish, supra, 145 N.J.

super. at 105. Therefore, under our deferential scope of

review, we find the Commissioner's decision to uphold

respondent's actions was not arbitrary, capricious, or

unreasonable. Carter, supra, 191 N.J. at 482.

 13 A-3383-15T1
 Petitioner further argues the Commissioner and ALJ erred

because they granted summary decision for respondent based on

disputed facts. According to petitioner, these disputed issues

included whether she actually threatened student safety; whether

she failed to comply with Dr. Mack's recommendations; the basis

for Dr. Mack's conclusions; and the sufficiency of her doctors'

conclusions. We decline to discuss this argument at length, as

the ultimate resolution of these issues has no bearing on

whether respondent's exercise of its statutory authority was

reasonable. See Parsippany-Troy Hills, supra, 188 N.J. Super.

at 167. In other words, this case turned on whether respondent

reasonably deemed petitioner ineligible for service based on Dr.

Mack's report and reasonably rejected petitioner's proof of

recovery letters. See N.J.S.A. 18A:16-4. Here, because a

"reasonable possibility" of harm warrants board action, we find

the Commissioner's grant of summary decision was appropriate in

this matter. Gish, supra, 145 N.J. super. at 105.

 Any remaining arguments not specifically addressed lack

sufficient merit to warrant further discussion. R. 2:11-

3(e)(1)(E).

 Affirmed.

 14 A-3383-15T1