**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3406-23

TIMOTHY CAPONE,

    Plaintiff-Appellant,

v.

MONTAGUE TOWNSHIP
BOARD OF EDUCATION,

    Defendant-Respondent.

_____

Argued November 13, 2025 – Decided November 26, 2025

Before Judges Mawla, Marczyk, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Sussex County, Docket No. C-000010-24.

Laura M. LoGiudice argued the cause for appellant (Green Savits, LLC, attorneys; Laura M. LoGiudice and Glen D. Savits, on the briefs).

Mary Anne Groh argued the cause for respondent (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys; Mary Anne Groh, on the brief).

PER CURIAM

Plaintiff Timothy Capone appeals from a May 31, 2024 order denying his motion to vacate an arbitration award entered in favor of defendant Montague Township Board of Education, terminating plaintiff as chief school administrator (CSA). We affirm.

The parties are familiar with the facts, which we need not repeat in detail here. To summarize, defendant placed plaintiff on leave due to allegations he: engaged in retaliation, intimidation, and discrimination against his staff; pressured staff to support his agenda before the Board; and attempted to interfere in the Board's election. Prior to filing tenure charges, defendant's counsel conducted an extensive investigation, and concluded plaintiff failed to perform his duties as CSA. Defendant filed a detailed, seven-count, 147-paragraph, statement of tenure charges seeking plaintiff's termination. Three of the seven counts alleged conduct unbecoming, and the remaining four counts were for neglect of duty.

The conduct unbecoming charges asserted plaintiff: mistreated staff he did not like by refusing to speak or interact with those members who did not support him, and engaged in verbally and emotionally demeaning conduct toward specific staff members (count one, specifications 29iii and iv); called a

staff member derogatory names and made inappropriate comments about the member's sexual orientation (count one, specification 30); directed staff not to nominate certain students for leadership positions in a district program and told staff to withhold an athletic consent form to cause a student to miss a portion of the athletic program, because he did not like the student's parents (count four, specifications 85-87); used his supervisory authority to direct staff to participate in Board meetings to coerce the Board into taking action, which would personally benefit him and retaliated against staff who did not comply (count six, specifications 120-21, 123-26); and enlisted staff to create social media accounts to attack his opponents on the Board, engaged in electioneering to run candidates for the Board, and contacted voters to vote for certain candidates (count six, specifications 126-31).

The arbitrator conducted a ten-day hearing. Defendant presented testimony from ten witnesses, including nine teachers and one Board member. Plaintiff and five witnesses testified on his behalf, including the former Board president, a former Board member, the school social worker, the facilities manager, and the school psychologist.

The arbitrator issued a forty-six-page written opinion, which analyzed and discussed the evidence, including witness credibility. She noted her findings

3

were confined to the allegations contained in the sworn tenure charges. This was because some witnesses testified to conduct outside the tenure charges. The arbitrator considered this testimony only for purposes of assessing credibility. She found insufficient evidence to support the neglect of duty charges but upheld the specifications of the conduct unbecoming charges.

The arbitrator concluded there was just cause for plaintiff's termination because his conduct was not characterized by isolated moments of poor judgment but "willful actions that destroyed the trust and respect necessary for continued employment." Plaintiff did not "merely make a stray comment about a parent to a teacher[,] . . . he directed an inexperienced teacher to thwart student engagement in enrichment activities, based on his personal dislike of the parents." This negatively impacted the student and sent the wrong message to the teacher under his supervision.

Similarly, plaintiff's instruction to teachers regarding the "[B]oard elections was not an inadvertent lapse of judgement. He attempted to have the teachers create a Facebook page under a false name for his political purposes" by "creat[ing] an atmosphere of fear of retaliation" for non-complying staff.

The arbitrator concluded the proven instances of misconduct "warrant[ed] termination, even without prior discipline or documented poor performance."

4

This was because plaintiff's role as the CSA was "not subject to daily oversight. He must be entrusted to lead with the trust and respect of the school community." Therefore, "corrective action would be futile and inappropriate" because of plaintiff's "actions[] and . . . failure to demonstrate any reflection or remorse."

Plaintiff filed an order to show cause to vacate the arbitration award on grounds the arbitrator exceeded her powers, and the award was procured by undue means. He claimed she exceeded her powers by dismissing plaintiff in violation of his contract, which required he receive notice and an opportunity to cure his performance issues. Plaintiff alleged he was denied due process because several allegations against him were raised for the first time during arbitration and were not set forth in the tenure charges. He claimed those charges, as well as the sworn tenure charges, were belatedly raised and barred by laches because after placing him on leave, the Board took fifteen months to formulate the charges and two years to present evidence against him. He further asserted the arbitrator erred when she did not adjudicate plaintiff's motion to dismiss the charges.

Plaintiff also argued the arbitrator erred because she did not consider certain factors to find just cause for his termination and did not apply the so-

called Fulcomer[1] factors prior to ordering his removal. He asserted his termination was not proportionate to his infraction because the circumstances showed defendant's investigation was biased and conducted unfairly. Plaintiff had a proven record of service, no prior disciplinary record, and there was no evidence his misconduct affected the school. Therefore, the arbitrator's findings about his lack of remorse and the futility of corrective action were unsupported by the facts and law.

Plaintiff's basis for seeking to vacate the award on undue means grounds was the arbitrator's decision was not supported by substantial credible evidence. He claimed she provided minimal reasons to support her findings and relied on inconsistent witness testimony.

The trial judge considered plaintiff's motion and subsequently issued a written opinion. After observing the narrow scope of review of an arbitration ruling, the judge addressed each of plaintiff's arguments.

The judge rejected plaintiff's claim he was entitled to notice and the ability to respond to the decision to place him on leave because his employment contract did not provide for such a process. Rather, the contract required notice

---

[1] In re Tenure Hearing of Fulcomer, 93 N.J. Super. 404 (App. Div. 1967).

and an opportunity to respond when the Board had discussions relating to plaintiff's annual evaluation, not in the instance of tenure charges.

Regarding the tenure charges, the judge found no due process violation because plaintiff received notice of the charges and had ample opportunity to defend against them. Plaintiff presented his own evidence and arguments to the arbitrator and continued to receive his salary and benefits while on leave.

The judge rejected plaintiff's arguments related to just cause and proportionality of the punishment. He concluded plaintiff did not identify "an apparent mistake of fact or law that warrant[ed] vacating the decision. . . . [T]he [a]rbitrator carefully explained the basis for her decisions, based on substantial evidence," and parsed what was and was not, conduct unbecoming. And the arbitrator explained she did not consider charges not found in the sworn tenure charges.

I.

Plaintiff reprises his arguments on appeal. Briefly stated, the applicable principles guiding our review are well established. The New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -36, enumerates several narrow grounds for a court to set aside an arbitration award.

7 A-3406-23

Arbitration awards must be set aside when "procured by . . . undue means." N.J.S.A. 2A:24-8(a). "Undue means" includes an arbitrator's "mistake of fact or an inadvertent mistake of law that is either apparent on the face of the record or admitted to by the arbitrator." Hillsdale PBA Loc. 207 v. Borough of Hillsdale, 263 N.J. Super. 163, 181 (App. Div. 1993) (citing Held v. Comfort Bus Line, Inc., 136 N.J.L. 640, 641-42 (Sup. Ct. 1948)), aff'd in part, rev'd in part, 137 N.J. 71 (1994). A court must also vacate an award "[w]here the arbitrator[] exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." N.J.S.A. 2A:24-8(d).

As the trial judge recognized, the court's authority to set aside an arbitration award is not to be exercised lightly. Indeed, to promote a sense of finality and ensure judicial efficiency, there is "a strong preference for judicial confirmation of arbitration awards." Middletown Twp. PBA Loc. 124 v. Twp. of Middletown, 193 N.J. 1, 10-11 (2007) (quoting N.J. Tpk. Auth. v. Loc. 196, 190 N.J. 283, 292 (2007)).

We review a trial judge's decision on a motion to vacate an arbitration award de novo. Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301,

316 (2019). Having done so, we affirm for the reasons expressed by the trial judge and add the following comments.

Plaintiff's claims regarding: the timing of the tenure charges, whether it hampered the defense or was barred by laches; how the arbitrator conducted the hearing; her refusal to adjudicate the motion to dismiss; and the scope of the evidence she considered, lack merit. "An arbitrator may conduct an arbitration in such manner as the arbitrator considers appropriate for a fair and expeditious disposition of the proceeding." N.J.S.A. 2A:23B-15(a). Accordingly, like any factfinder, an arbitrator may "determine the admissibility, relevance, materiality, and weight of any evidence." Ibid. As the judge noted, regarding the arbitration of tenure charges, "the . . . [B]oard . . . shall provide all evidence . . . to the employee or the employee's representative. The . . . [B]oard . . . shall be precluded from presenting any additional evidence at the hearing, except for purposes of impeachment of witnesses." N.J.S.A. 18A:6-17.1(b)(3).

Our review of the record does not reveal any violation of these statutory precepts. Plaintiff had ample notice of the charges against him and mounted a vigorous defense. The arbitrator not only properly exercised her powers to conduct a fair hearing, but when it came to consideration of additional facts adduced at the hearing, she abided by N.J.S.A. 18A:6-17.1(b)(3).

Additionally, we reject plaintiff's argument his termination was unwarranted or disproportionate under the facts, and the arbitrator made a mistake of law by not considering the just cause and Fulcomer factors. Arbitrators have "broad discretion" to "fashion an appropriate remedy when imposing a penalty for tenure charges." Sanjuan v. Sch. Dist. of W. N.Y., 256 N.J. 369, 383 (2024).

"During the term of any employment contract with the [B]oard, a [CSA] shall not be dismissed or reduced in compensation except for . . . conduct unbecoming . . . ." N.J.S.A. 18A:17-20.2. "Unbecoming conduct . . . has been defined as conduct 'which has a tendency to destroy public respect for [government] employees and confidence in the operation of [public] services.'" In re Tenure Hearing of Young, 202 N.J. 50, 66 (2010) (alterations in original) (quoting Karins v. City of Atlantic City, 152 N.J. 532, 554 (1998)).

We have upheld the dismissal of a CSA for conduct unbecoming. In re Tenure Hearing of Vitacco, 347 N.J. Super. 337, 344-45 (App. Div. 2002). In Vitacco, the district certified tenure charges against its CSA after he pled guilty under a federal indictment to filing false tax returns for not reporting funds embezzled from the district. Id. at 339-40. On appeal, we upheld the termination because his misconduct "clearly violated his position of public

trust." Id. at 343. We rejected the argument that discipline less than dismissal was warranted because a CSA has "a duty to set an example and to conduct [themselves] in accordance with the highest standards." Id. at 344.

Pursuant to these principles, we discern no error in the arbitrator's decision to terminate plaintiff. Viewed in any light, plaintiff's conduct clearly tended to destroy public respect for government employees and confidence in the operation of public services. His conduct certainly was not in accord with the highest standards for his position of public trust.

Finally, we are unconvinced the result would be different applying either the just cause or Fulcomer factors. Citing a New Jersey School Board Association article[2] and other non-precedential sources, plaintiff claims the just cause factors require consideration of the following:

> 1. Did the employer give the employee [fair] forewarning or foreknowledge of the possible or probable disciplinary consequences of the employee's conduct?
>
> 2. Did the employer's rule or order reasonably relate to the orderly, efficient, and safe operation of the business?

---

[2] N.J. Sch. Bds. Ass'n, The Meaning of Just Cause, at 1W06-2W06 (Apr. 2016), https://www.njsba.org/wp-content/uploads/2016/04/negotiations_advisor_justcause.pdf.

11

3. Did the employer, before administering discipline to an employee, try to discover whether the employee did in fact violate or disobey a rule or order of management.

4. Was the employer's investigation conducted fairly and objectively?

5. During the investigation, did the [factfinder] obtain substantial evidence or proof that the employee was guilty as charged?

6. Has the employer applied its rules, orders, and penalties evenhandedly and without discrimination to all employees?

7. Was the degree of discipline administered by the employer in a particular case reasonably related to a) the seriousness of the employee's proven offense and b) the record of the employee in his service with the employer?

Pursuant to Fulcomer, plaintiff argues the arbitrator should have considered: whether his actions were premeditated, cruel or vicious, or done with intent to punish; the nature and gravity of the offenses under all the circumstances involved; his record and ability; his disciplinary record and the harm or injury his conduct had on the maintenance of discipline and the proper administration of the school system; and the impact of the penalty on his teaching career.

N.J.S.A. 18A:17-20.2 does not predicate a finding of conduct unbecoming or the ability to terminate on application of the just cause or Fulcomer factors.

12

Even if the law required such consideration, we are unconvinced the application of either rubric would save plaintiff from termination based on the facts of his case.

The remaining arguments raised on appeal lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

13